UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA R. GIER

        Plaintiff,                    CIVIL ACTION NO. 06-CV-13989-DT

vs.                                  DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 7), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket # 6), and that Plaintiff's Complaint be **DISMISSED.**

II. **PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Linda P. Gier filed an application for Disability Insurance Benefits (DIB) in June 2003. (Tr. 48-51, 58). She alleged she had been disabled since October 31, 1997 due to neck and back problems, degenerative arthritis, and bone spurs. *Id.* Plaintiff's claims were initially denied in July 2003. (Tr. 30-35). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 36-37). A hearing took place before ALJ Earl Witten on September 1, 2005. (Tr. 317-55). Plaintiff was represented by an attorney at the hearing. (Tr. 27-29, 319). The ALJ denied Plaintiff's claims in an opinion issued on March 23, 2006. (Tr. 15-26). The Appeals Council denied review of the ALJ's

decision on July 7, 2006 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 4-14). Plaintiff appealed the denial of her claim to this Court and both parties have filed motions for summary judgment.

### III. MEDICAL HISTORY

The medical records reflect that Plaintiff reported back pain in 1990 to her treating physician, Dr. Raymond Cole. (Tr. 212). Thereafter, Plaintiff was evaluated for physical therapy. (Tr. 89-92)[1]. Plaintiff reported that her back pain began in July 1990 when she was reaching for shampoo and experienced an "electrical shock" in her back. She stated that afterwards she could barely reach, bend, or walk. Plaintiff described her pain as a constant burning and aching in her upper and lower back, radiating into her left leg. Plaintiff had been golfing four days earlier but did not know if that caused the problem. She also reported that she had pain while resting but the pain did not awaken her. Standing and walking aggravated her condition and sitting in a recliner eased her symptoms. (Tr. 91). Examinations showed some limitation in flexion, extension, and rotation. (Tr. 89-91). Plaintiff was treated with moist heat, electrical stimulation, and massage. She was also instructed on home exercise programs. Plaintiff reported that she intended to return to her part-time work at the golf course the following week. (Tr. 90, 91-92).

There is no evidence of further treatment in the record until April 1998. An x-ray taken of Plaintiff's lumbar spine in April 1998 showed no spondylolysis or spondylolisthesis but did suggest

---

[1] The record contains Dr. Cole's treatment records from 1990 to 2005, which chronicle his routine treatment of Plaintiff for various medical issues, including back pain, PAP smears, mammograms, cold/flu symptoms, cholesterol, and diabetes. Dr. Cole generally prescribed medication, ordered testing, or referred Plaintiff to specialists for further evaluation. (Tr. 109-120, 172-181, 201-212). According to these records, Dr. Cole saw Plaintiff five times in 1998, four times in 1999, two times in 2000, five times in 2001, and three times in 2002. *Id.*

minimal degenerative osteoarthritic findings off of the lower lumbar vertebrae. There was also minimal joint space narrowing between L1-L2 and L2-L3 and very minimal narrowing at L5-S1. (Tr. 161).

Dr. Cole referred Plaintiff to Dr. Kabindra N. Mishra, an orthopedic surgeon, for an evaluation of her lower back in April 1998. Plaintiff reported to Dr. Mishra that she had constant, radiating lower back pain, which was aggravated by standing too long or walking long distances. (Tr. 94). An examination of Plaintiff's lumbar spine revealed that on a scale of 1 to 5, Plaintiff had swelling 3+, induration 1+, tenderness 2+, and muscle spasms 2+. She also walked with an antalgic gait. However, Plaintiff had a full range of motion in her lower extremities with no pain. Her muscle strength was 5+ and her reflexes and sensations were intact. Straight leg raising tests were negative. (Tr. 95). Dr. Mishra recommended that Plaintiff have an MRI of her lumbar spine and he prescribed physical therapy. *Id.*

A subsequent MRI showed evidence of degenerative disc disease at the L4-L5 and L5-S1 levels, moderate central and right paracentral herniation of L4-L5, and mild central and right paracentral herniation of L5-S1. There was no evidence of spinal stenosis or focal disc herniation. (Tr. 169-70).

An x-ray taken of Plaintiff's cervical spine in April 1999 showed moderate degenerative osteoarthritic findings at C5, C6, and C7 with joint space narrowing. A moderately sized osteophyte off the anterior inferior body of C5 was also seen. (Tr. 151). A bone density test was normal. (Tr. 101).

Plaintiff returned to Dr. Mishra to discuss the MRI results. (Tr. 96). Plaintiff reported that she was doing somewhat better but that physical therapy made her back worse. An examination showed that Plaintiff had a full range of motion, no swelling or effusion, and minimal tenderness. Dr. Mishra recommended a home exercise program and noted that Plaintiff did not have radicular pain or signs of nerve entrapment. *Id.*

On May 7, 2002 Dr. Cole reported that Plaintiff had intractable back pain due to disc space narrowing at L4-L5 and L5-S1, degenerative osteoarthritis found throughout her lumbar spine, and large spurs at L3. He recommended that Plaintiff see a neurologist. (Tr. 102). Dr. Cole also noted that Plaintiff had chronic obstructive lung disease but that her lung fields appeared free of any acute disease process. (Tr. 103, 150).

Plaintiff was thereafter seen by Dr. Harish Rawal, a neurosurgeon, on May 13, 2002. (Tr. 105). Plaintiff reported to Dr. Rawal a history of back problems for the past few years that worsened over the last three months to the point of immobility. Plaintiff stated that she had to lie down after sitting for too long or walking too far. According to Plaintiff, she used to be able to walk for 4 to 5 miles but could now only walk for 50 to 100 feet. Plaintiff denied any leg pain. *Id.* Dr. Rawal noted that aside from Plaintiff's complaints of back pain she was in quite good health. Her diabetes was controlled with diet. However, Dr. Rawal commented that Plaintiff was a heavy smoker. *Id.*

Dr. Rawal's examination of Plaintiff's upper extremities was unremarkable. An examination of Plaintiff's back revealed somewhat limited movement but a straight leg raising test was negative and Plaintiff's reflexes were intact. (Tr. 105). Dr. Rawal also noted that the disc space narrowing in Plaintiff's back was not significant and that her disc herniation was mild. He also commented that Plaintiff did not have neurogenic claudication so he did not believe that she had significant nerve root compression. However, based upon Plaintiff's report of a marked reduction in her ability to walk, Dr. Rawal recommended a series of epidural injections to reduce Plaintiff's pain. *Id.* The record indicates that Plaintiff received one epidural injection in May 2002 and another in November 2002. (Tr. 106-07).

MRIs of Plaintiff's cervical and lumbar spine were taken on May 18, 2003. (Tr. 162-63, 196, 198-200). The MRI of Plaintiff's cervical spine showed spondylolysis at C5-C6 and C6-C7. There was also bony encrochment on the neural foramina bilaterally at these levels with moderate right paracentral

disc herniation. (Tr. 162). The MRI of Plaintiff's lumbar spine revealed a moderately sized right paracentral disc herniation at L4-L5 and degenerating discs at all lumbar levels. (Tr. 163). No stenosis was seen. *Id.*

On July 17, 2003 a state agency physician reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity ("RFC") Assessment form. (Tr. 182-89). The physician concluded that Plaintiff had the RFC to: (1) lift/carry 20 pounds occasionally and 10 pounds frequently; (2) stand/walk for about 6 hours in an 8-hour workday; (3) sit for about 6 hours in an 8-hour workday; and (3) occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 183-84).

Additional x-rays were taken of Plaintiff's cervical and lumbar spine in May 2005. (Tr. 191). Plaintiff's cervical spine showed degenerative changes between C5-C7. There were also minor degenerative changes to Plaintiff's lumbar spine. *Id.*

Dr. Cole wrote a letter in August 2005 concerning Plaintiff's application for social security benefits. He noted that Plaintiff had chronic back pain caused by her herniated discs, degenerative disc disease, and osteoarthritis, which rendered her disabled and unable to engage in any gainful employment. (Tr. 197).

## IV.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff was 58 years old when she testified before the ALJ. (Tr. 322). She had a high school education. (Tr. 323). Prior to taking testimony, the ALJ confirmed with Plaintiff and her counsel that Plaintiff's date last insured for purposes of DIB was December 31, 2002.[2] (Tr. 320-21). Plaintiff thereafter testified that prior to that date, she had four herniated discs and degenerative

---

[2] This date represents the statutory cut-off point by which Plaintiff was required to prove disability. See 42 U.S.C.A. §423(a), 20 C.F.R. § 404.101.

arthritis in her lower back which prevented her from working. (Tr. 324). She rated her pain as an 8 out of 10 on average but it had reached a level 10 at one point in 1998 and 2002, which required her to get nerve block shots at the hospital. (Tr. 324-25). Plaintiff described her lower back pain as constant. (Tr. 325). Plaintiff also testified that she had a herniated disc or pinched nerve in her neck, which caused pain that radiated from the base of her skull down her shoulders, numbness in her left arm, and headaches. (Tr. 325-26). Plaintiff claimed to experience pain upon turning her head from side to side. (Tr. 326). She rated her neck pain as 7 to 9 out of 10 and the pain was likewise constant. *Id.* Plaintiff also told the ALJ that she had arthritis in her left foot and ankle and had arch problems. (Tr. 327). Her doctors treated the arthritis with a series of injections and told her to wear lifts for support. *Id.* Plaintiff stated that the lifts only fit in her tennis shoes, which she normally wore when walking. (Tr. 328). She indicated that the pain in her feet was not constant but occurred for about 1 week per month when the weather was bad. *Id.* She rated the pain as a 5 out of 10. (Tr. 329). The ALJ also asked Plaintiff about her COPD. Plaintiff stated that she no longer had problems with her breathing and that her COPD had never been a basis for her disability claim. (Tr. 352).

Plaintiff informed the ALJ that she took Vicodin and Celebrex for her pain. The medication caused no side effects and she took the medication as prescribed. Plaintiff stated the medication made the pain bearable but she still had pain. (Tr. 329-330).

Due to her impairments, Plaintiff stated that she could not lean forward, stand or sit for very long, lift, hang clothes, golf, pull a garden hose, or vacuum. (Tr. 324). Plaintiff indicated that she was required to sit with her feet elevated on a foot stool and to use a straight backed chair in order to relieve her symptoms. She estimated that she could sit for 15 to 20 minutes before changing positions. (Tr. 330). Plaintiff also testified that she could stand for no more than 30 minutes due to

her lower back pain before she had to sit. (Tr. 331). She could walk about 1/4 a mile but it was with a limp. (Tr. 331-32). Plaintiff estimated that she could lift no more than 2 to 3 pounds up off of the floor because it was too painful to bend. (Tr. 332-33). She could load dishes into the dishwasher if she took breaks but it was difficult to bend down to unload the dishwasher. (Tr. 333). Plaintiff testified that her husband did the heavy vacuuming but she could sweep or use a light, electric broom. She also prepared meals such as salads, bacon and eggs, casseroles, and pizzas but her husband did the grilling. (Tr. 334). Plaintiff testified that she could take showers and dress by herself although it was hard to shave or cut her toenails. She could not take a bath. (Tr. 337-38). Plaintiff also explained that she went to bed around 11 p.m. but would wake up during the night due to pain. (Tr. 338-39).

Plaintiff stated that she sometimes had "bad" days when her back would give out, which left her bedridden for days or weeks. (Tr. 334-37). On one occasion, she stayed on the hallway floor after her back gave out and she had to use a stool with wheels to get to the bathroom. (Tr. 335). According to Plaintiff, simple activities such as housework or showering could cause her back to give out. (Tr. 337)

### B. Vocational Expert's Testimony

Dr. Donald Heckler, a vocational psychologist, testified as an expert at the hearing. (Tr. 41, 348-55). Dr. Heckler testified that Plaintiff's job at a dry cleaners was classified as light, semi-skilled work. (Tr. 351-52). Dr. Heckler opined that Plaintiff could still perform her work at the dry cleaners if she had the RFC to: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand/walk for about 6 hours in an 8-hour workday; (3) sit for about 6 hours in an 8-hour workday; (4) occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 183-84; 352). However, Dr. Heckler testified that Plaintiff could not perform this work or any competitive work if Plaintiff's

testimony with respect to her pain, discomfort, and limitations were fully credible. (Tr. 352). Dr. Heckler also indicated that Plaintiff did not have any skills that would transfer to sedentary work. *Id.*

### V. <u>LAW AND ANALYSIS</u>

#### A. <u>STANDARD OF REVIEW</u>

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

#### B. <u>FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS</u>

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

    (1)    he was not presently engaged in substantial gainful employment; and

> (2)   he suffered from a severe impairment; and
>
> (3)   the impairment met or was medically equal to a "listed impairment;" or
>
> (4)   he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.  ARGUMENTS

The ALJ found at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful employment since her alleged onset date. (Tr. 26). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and chronic obstructive pulmonary disease. (Tr. 20, 26). The ALJ further found at step three that Plaintiff's documented impairments did not meet or medically equal any listed impairments. *Id.*

At step four of the sequential analysis, the ALJ concluded that Plaintiff had the RFC to perform light work that involved only occasional climbing, balancing, stooping, kneeling, crouching, or crawling. (Tr. 25). The ALJ thereafter concluded that, based upon the VE's testimony, Plaintiff could return to her past relevant work as a shirt presser. *Id.*

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence. Plaintiff does not point to any significant evidence overlooked by the ALJ or indicate how the ALJ improperly applied the law. Rather, the crux of Plaintiff's argument is that the ALJ's application of law to the relevant facts resulted in erroneous conclusions regarding Plaintiff's pain and credibility and the opinion from Plaintiff's treating physician, Dr. Cole. (Pl.'s Mot. for Summ.J. at 6-7). However, as previously noted, the ALJ's decision must be affirmed if there is substantial evidence to support it even if there is evidence to support a contrary decision. *Her,* 203 F.3d at 389-90. Based upon the record, the Court concludes that the ALJ's findings were supported by substantial evidence.

### 1. **Plaintiff's Credibility**

Plaintiff's primary argument is the ALJ erred in assessing her subjective complaints of disabling pain and in finding her less than fully credible. "It is well-established that pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). A claimant's statements as to pain, however, will not alone establish that he is disabled. *See Walters*, 127 F.3d at 531; see also 20 C.F.R. § 404.1529(a). The Sixth Circuit has developed a two-prong test to evaluate a claimant's assertions of disabling pain:

> First, we must examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1 986)); see also 20 C.F.R. § 404.1529(a).

Notwithstanding the above, the ALJ cannot rely solely on the lack of objective medical evidence because the regulations explicitly provide that "we will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to the available objective medical evidence, the ALJ must therefore consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. See 20 C.F.R. § 404.1529(c)(3); see also *Felisky v. Bowen*, 35 F .3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Moreover, because pain is a largely subjective matter, an ALJ may properly consider the claimant's credibility in evaluating her complaints of disabling pain. *See Walters*, 127 F.3d at 531. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* Furthermore, an ALJ's findings based on the credibility of the claimant are to be accorded great weight and deference. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See id.*

The ALJ properly applied these standards and thoroughly considered Plaintiff's complaints of disabling pain. First, he found Plaintiff suffered from underlying medical conditions that would be expected to cause some pain-specifically degenerative disc disease of the lumbar and cervical spine. However, the ALJ concluded that the evidence of record did not establish that these impairments could reasonably be expected to give rise to pain so severe that it precluded Plaintiff from performing the limited range of light work as set forth in his RFC. (Tr. 24).

The ALJ noted that the objective medical evidence supported a conclusion that, despite her claims of disabling pain, Plaintiff could perform a limited range of light work. This determination is

supported by substantial evidence. As to Plaintiff's cervical spine, the ALJ noted that testing had shown moderate degenerative osteoarthritis with joint space narrowing and some osteophytic projections. However, there was very little evidence in the record of any complaints or treatment for neck or arm pain prior to the date last insured. (Tr. 20, 22-23). Furthermore, the May 2002 examination of Plaintiff's upper extremities was normal. (Tr. 105). As to Plaintiff's lumbar spine, the ALJ noted that Plaintiff had a long history of treatment and that tests confirmed herniated discs with some disc space narrowing. (Tr. 20-21, 23). However, there is no evidence in the record of any muscle atrophy or neurological deficits after the onset date of disability, which are typical indicators of severe pain. *See Jones v. Sec'y of Health & Human Srvs.*, 945 F.2d 1365, 1369-70 (6th Cir. 1991). Dr. Mishra noted in April 1998 that Plaintiff had no radicular pain and no sign of nerve entrapment. Dr. Rawal found in May 2002 that there was neurogenic claudication of Plaintiff's spine so he concluded that she likely did not have significant nerve root compression. Furthermore, examination findings showed that Plaintiff had good muscle strength, normal reflexes, and intact sensations. Straight leg raising tests were negative and Plaintiff had a full range of motion until May 2002 when it was noted to be only "somewhat" limited.[3]

The ALJ also noted that there was a gap in Plaintiff's treatment records, which further undermined Plaintiff's claim of disabling pain. (Tr. 23). The ALJ observed that, based upon the record before him, Plaintiff had not received any medical treatment for approximately a year between April 2002 and May 2003.[4] The Court also notes that the records support the ALJ's conclusion that Plaintiff's

---

[3] While Plaintiff's examination in April 1998 indicated that Plaintiff walked with antalgic gait, there was no evidence in the record that she required an assistive device to walk.

[4] In actuality, the gap occurs between May 2002 and May 2003. The difference is immaterial as it still represents a year span during which Plaintiff did not receive any treatment aside from one epidural in November 2002.

lower back problems were intermittent. (Tr. 23). There are no treatment records between October 1997 (the alleged onset date) and April 1998. Plaintiff thereafter saw Dr. Cole in October 1998 but there are no further treatment records until April 1999. After April 1999, there are only four treatment records between July 1999 and April 2000.[5] Plaintiff was treated five times in 2001 between May and July. And, aside from one visit with Dr. Cole in April 2002, Plaintiff's medical treatment in 2002 essentially occurred only in May.

As further noted by the ALJ, the records reflect that Plaintiff's pain was generally managed by medication, which Plaintiff asserted caused no side effects, and home exercise programs. She received only two epidural injections, which were administered in May and November 2002. Plaintiff was not prescribed a TENS unit and she had not undergone any back surgery.[6] (Tr. 23-24). The ALJ properly considered the evidence of Plaintiff's conservative, intermittent treatment as a factor that undermined Plaintiff's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 96-7p, 1996 WL 374186 *7 (". . . the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.").

The ALJ also reviewed the RFC Assessment form completed by the state agency physician as instructed by the regulations. *See* 20 C.F.R. § 404.1529(c). The state agency physician had opined that Plaintiff retained the RFC to perform a range of light work. Such an assessment was consistent with the ALJ's RFC finding. (Tr. 24-25).

---

[5] Plaintiff testified that she was bedridden for two weeks in 1999 when her back gave out. There is no indication in the medical records that she reported this to Dr. Cole during her few visits in 1999.

[6] During the relevant time period, Plaintiff's physicians recommended physical therapy, which Plaintiff asserted did not help. However, there are no treatment records from Plaintiff's physical therapist in the record and there is no indication of how long Plaintiff attempted physical therapy. Plaintiff also reported to Dr. Cole that physical therapy was aggravating her back in May 1998 but by August 1998 it was helping. (Tr. 118-19).

The ALJ further cited to the fact that Plaintiff's reported daily activities were not consistent with her alleged disabling pain, which Plaintiff described as "constant". The Regulations specifically instruct ALJs to consider evidence of a claimant's daily activities. 20 C.F.R. § 404.1529(c)(3). The ALJ noted that despite her claims of disabling pain, Plaintiff retained the ability to cook daily, perform light household chores, do laundry, feed her dog, care for her personal needs, walk, drive, grocery shop, handle finances, read and watch television daily, and visit with family members and friends. (Tr. 23-24, 75-81).

Based upon the foregoing, the Court concludes that substantial evidence supports the ALJ's RFC and credibility determinations. Although Plaintiff points to evidence in the record that could support contrary determinations, it is the role of the ALJ, not the court, to weigh the evidence and resolve any conflicts therein. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)("Our role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony. Instead, we focus on whether substantial evidence supports the Commissioner's decision...").

## 2. Dr. Cole's Opinion Regarding Plaintiff's Disability

Plaintiff makes a passing argument that the ALJ erred by failing to adopt Dr. Cole's August 2005 opinion that Plaintiff was disabled. As the Sixth Circuit stated in *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimant's only once." Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, an ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is otherwise inconsistent with other substantial evidence in the record.

*See Walters*, 127 F.3d at 530. The ALJ need not, however, "give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(e)(3). One such issue is "the determination or decision about whether you meet the statutory definition of disability." 20 C.F.R. § 404.1527(e)(1).

The ALJ considered Dr. Cole's opinion that Plaintiff was disabled but decided to afford it little weight. (Tr. 24). Substantial evidence supports the ALJ's determination. As the ALJ noted, the issue of disability was reserved for the Commissioner and therefore Dr. Cole's opinion that Plaintiff was disabled was entitled to no "special significance." Furthermore, the ALJ correctly noted that Dr. Cole did not support his opinion with any acceptable clinical or laboratory findings. Rather, Dr. Cole simply recited the various diagnoses related to Plaintiff's back. He did not specify that Plaintiff's impairments resulted in any particular physical limitations or how those physical limitations affected or prevented certain specific types of work activities. For example, there is nothing in Dr. Cole's letter that states that Plaintiff was unable to lift a certain amount, walk a certain distance, or sit due to her medical conditions or that Plaintiff's treatment for her medical conditions would significantly interfere with Plaintiff's ability to work. The Court notes that although Dr. Cole saw Plaintiff on several occasions, there are no examination findings within those reports that are probative of Plaintiff's physical limitations. Moreover, the ALJ noted that Dr. Cole's 2005 letter did not indicate a disability date. Therefore, it was unclear if Dr. Cole believed Plaintiff's disability existed before the expiration of her benefits. Lastly, the ALJ found that Dr. Cole's opinion of disability was not consistent with the objective evidence as a whole. The ALJ's finding in this regard was supported by substantial evidence for the same reasons noted by the Court above as to Plaintiff's credibility. Based upon these facts, the ALJ properly afforded little weight to Dr. Cole's opinion regarding Plaintiff's disability.

## VI. <u>RECOMMENDATION</u>

The Commissioner's decision is supported by substantial evidence.  Defendant's Motion for Summary Judgment (Docket # 7) should be **GRANTED**.  Plaintiff's Motion for Summary Judgment (Docket # 6) should be **DENIED** and her Complaint **DISMISSED**.

## VII. <u>NOTICE TO THE PARTIES</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 26, 2007                                  s/ Mona K. Majzoub                              
                                                                            MONA K. MAJZOUB
                                                                            UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: March 26, 2007	s/ Lisa C. Bartlett
	Courtroom Deputy